Christopher J. Hamner, Esq. (SBN 197117)
**HAMNER LAW OFFICES, APLC**
26565 West Agoura Road, Suite 200
Calabasas, California 91302
chamner@hamnerlaw.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GROWER DIRECT SUPPLY, INC., a California Corporation<br><br>Plaintiffs<br>v.<br><br>SEVILLE FARMS, INC., a Texas Corporation *et al*.<br><br>Defendants | Case No.: 2:23-cv-05428<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date: January 11, 2024, 2023<br>Time: 10:00 a.m.<br>Place: Courtroom 6D<br><br>Honorable Fernando M. Olguin |

## POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants' second motion to dismiss in this case – this time on behalf Defendants Seville Farms and Woodbridge Partners – makes the same arguments as Defendants' still under consideration motion to dismiss in this matter on behalf of Defendant Robert Brentlinger. As set forth in Plaintiff's opposition to the previous motion to dismiss, the motion should fail for the following reasons:

1. There exists a legitimate question as to whether there are the necessary minimum contacts here between Seville Farms and California. **As set for the below, Seville Farms certainly seems to have recently been selling its products nationwide non Amazon.com and Walmart.com.** To what extent Seville Farms was involved in these sales and the amount and frequency of these sales is something currently unknown. In two declarations submitted by Robert Brentlinger in support of Defendants' two motions to dismiss, Mr. Brentlinger has not specifically addressed these issues. Plaintiff submits jurisdictional discovery is necessary here to learn these facts;

2. Plaintiff has alleged in detail the alter ego liability alleged here. If this court has jurisdiction over Seville Farms, it has jurisdiction over the remaining Defendants as alter egos. Plaintiff has properly alleged its alter ego claims in the Second Amended Complaint ("SAC") according to he relevant law. If the court disagrees, Plaintiff respectfully requests leave to appropriately amend; and

3. Plaintiff has properly alleged claims for Breach of Contract, Fraudulent Inducement, Injunction and Fraudulent Transfer are properly pled in ¶¶ 8,9, 36 37 and 38 of the SAC. If the court disagrees, Plaintiff requests leave to amend.

## II. RELEVANT FACTS

### A. THE SECOND AMENDED COMPLAINT

In the SAC, Plaintiff makes detailed and specific allegations regarding both Seville's contacts with California and Woodbridge's alter ego liability as one of the "Brentlinger Defendants." As set forth below, for purposes of this motion, these facts must be taken as true (with emphasis added):

> The Defendants are subject to the jurisdiction of the Court since the transactions that are the subject of this matter were entered into with Plaintiff in California, and because **Defendants systematically and continually conduct business throughout the Court's Judicial District, or are alter egos of said Defendants.** SAC ¶ 2.
>
> Defendant Seville Farms Inc. ("Seville") is a wholesale nursery which provides plants and other nursery-related products to nationwide retailers such as Home Depot and Lowes. **In May of 2022, Seville and the Plaintiff entered into an agreement for Seville to purchase seeds from the Plaintiff in Walnut, California.** SAC ¶ 4.
>
> … Plaintiff alleges that at the time the transaction which is the basis for this matter was entered into between Seville and the Plaintiff, the Brentlinger **Defendants knew Seville was severely underfunded and entered into said transaction with knowledge that Seville would not and could not pay for the seeds purchased by the Plaintiff**, and it was the Brentlinger Defendants' intention to purchase the seeds from the Plaintiff **with the intention that any claim made for the payment for the seeds could only be made against Seville and not the Brentlinger Defendants, thereby protecting the Brentlinger Defendants from any consequences for their unfair and fraudulent contract as alleged herein.** SAC ¶ 7.
>
> Plaintiff alleges that there exists, and at all times mentioned herein existed, **a unity of interest and ownership between Seville, Woodbridge, and the Brentlinger Defendants such that any individuality and separateness between these Defendants does not exist, because, among other reasons, Seville was grossly underfunded** when it ordered the seeds from the Plaintiff, and **allowing only Seville to be responsible for the breach of contract and fraud associated with this seed order would result in a severely unfair result and would otherwise sanction an**

> **injustice** against the Plaintiff. Adherence to the fiction of the separate existence of Seville, Woodbridge, and the Brentlingers should not be permitted. Based on the foregoing, personal jurisdiction exists here over Woodbridge and the individual Brentlinger Defendants as alter egos of Seville… SAC ¶ 8.
>
> Plaintiff alleges that prior to ordering the seed products which are the subject of this action, Seville and the Brentlinger Defendants were aware that it had lost or was about to lose a major retail customer and therefore would not be able to meet its financial obligations, including its financial obligations to the Plaintiff. **In other words, Seville knew at the time it made its seed orders from the Plaintiff that Seville would most likely not be able to pay for these orders.** Plaintiff alleges Seville ordered the product from the Plaintiff in order to fulfill all existing orders, so they would not "burn any bridges" with their remaining retail customers and did so knowing that they could not and would not pay the Plaintiff for these orders. SAC ¶ 16.
>
> Prior to the dates Seville began ordering product from the Plaintiff, Defendants were aware that Seville was experiencing extreme financial difficulty as a result of losing a major customer. **Defendants also knew that as a result of Seville's severe financial problems and gross underfunding, it would not be able to meet its financial obligations.** SAC ¶ 23

## III. ARGUMENT

### A. SEVILLE FARMS HAS MINIMUM CONTACTS WITH CALIFORNIA THROUGH STREAM OF COMMERCE

Contrary to what is stated by Defendant Robert Brentlinger in his declaration in support of the instant motion, while it was still in business Seville Farms did do business in California. Below are copies of ads for Seville Farms products recently sold on Walmart.com and Amazon.com:



Shopping Images Jobs Plants A

$13.99 · Free 90-day returns

Walmart
https://www.walmart.com › Seville-...

Seville Farms The Gardians Herb Tea Mix Herbs, 6 Pack

Seville Farms. Seville Farms The Gardians Herb Tea Mix Herbs, 6 Pack. USD$14.99. You save…

$14.99 · Free 90-day returns

Walmart
https://www.walmart.com › Seville-...

Seville Farms Kitchen Mini Spicy Pepper, 2.7 inch

Bite into hot, spicy, peppers whenever you want. Take your cooking up a notch! Enjoy fresh peppers, great for eating raw, pickling, frying,…

People also ask

Who is the owner of Seville Farms?

Feedback


6:30
5G
AA
amazon.com
amazon
prime
26
Search Amazon
Deliver to [redacted]
Seville Farms
+ Follow
CATEGORIES
Search all Seville Farms
Currently unavailable
Currently unavailable

(See copies of Seville Walmart and Amazon.com ads attached at ¶ 2 of the Hamner Declaration filed herewith.)

Until Seville went out of business, these were live ads directed at customers nationally, including in California. The United States Supreme Court first recognized the stream-of-commerce theory as one way a forum State might have sufficient minimum contacts for purposes of establishing specific jurisdiction over a manufacturing defendant. *World-Wide Volkswagen Corp*., 444 U.S. 286 (1980). In the case, the Supreme Court concluded: [I]f the sale of a product by a manufacturer or a distributor . . . is not simply an isolated occurrence, but arises from the efforts of a manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or others. *Id*., 444 U.S. at 297.

Consistent with the standard set forth in *World-Wide Volkswagen Corp.*, the sale of Seville Farms products in this regard was "not simply an isolated occurrence, but arises from the efforts of a manufacturer or distributor to serve directly or indirectly, the market for its product in other States." See *Id*. Where a person "purposefully direct[s]" his actions at the residents of a particular forum, the person should have an expectation that he may be subject to litigation in that forum on account of those activities. *Id.*

Here, there are strong indications Seville Farms did just that. These ads were directed at California consumers and it is likely that with Seville Farms' knowledge and intention, many sales were made to California residents. The sales would clearly be "by the manufacturer" as Seville Farms had either sold product to Amazona and Walmart, or Seville Farms sent the items directly from Texas to California when as sale was made through one of these websites.

**B. DEFENDANTS ALSO AVAILED THEMSELVES OF CALIFORNIA FARMERS BY PURCHASING PRODUCT FROM PLAINTIFF IN CALIFORNIA**

If a defendant should have foreseen that his actions would subject him to jurisdiction, such as where a defendant purposefully avails himself of the benefits and protections of a forum's laws by conducting business there, the defendant cannot and should not be able to evade the jurisdiction of the forum's courts. *Id*. at 474-75 (citing *World-Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286 (1980)).

Here, Seville Farms contacted Plaintiff in California to purchase Plaintiff's seeds cultivated and grown in California. This is the conducting of business in California. Seville Farms should not be permitted to avail itself of California's benefits and protections in this manner, with the alleged intention to never pay, without reasonably foreseeing that a lawsuit such as this might be brought against them in California.

**C. ROBERT BRENTILINER'S DECLARATION STILL DOES NOT DISCUSS SALES IN CALIFORNIA**

In its opposition to Defendants' similar motion to dismiss on behalf of Robert Brentlinger (currently under consideration by the court) Plaintiff asserted that this declaration was lacking in certain material facts such sales information in California. In his latest declaration Robert Brentlinger merely states in ¶¶ 14-16 that:

> 14. Seville does not regularly conduct or transact business in California, is not qualified to do business in California, and does not have a registered agent for service in California.
>
> 15. Seville does not systematically and continually conduct business throughout California.
>
> 16. Seville has no operations, employees, offices, bank accounts or other personal or real property in California.

Considering the fact that Seville Farms was selling its product nationwide on Amazon.com and Walmart.com, the degree to which Seville Farms did or did not regularly conduct or transact business in California is definitely in dispute. This is of course an important reason why Plaintiff should be permitted to take jurisdictional discovery here.

**D. <u>JURISDICTIONAL DISCOVERY IS NEEDED HERE</u>**

Defendants cite *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995) as follows: "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery."

However, Defendants' quote from the *Terracom* case in its brief omits the citation indicating it is a quote from an earlier case - *Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259 (M.D.N.C. 1988). The full quote from the *Rich* case states:

> When plaintiff can show that discovery is necessary in order to meet defendant's challenge to personal jurisdiction, **a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous.** *Compagnie des Bauxites de Guinee v. L'Union,* 723 F.2d 357 (3d Cir.1983); *see also Enterprise Intern. v. Corporacion Estatal Petrolera,* 762 F.2d 464, 475 (5th Cir.1985); 4 J. Moore, J. Lucas & G. Grother, *Moore's Federal Practice,* § 26.56(6) (2d ed. 1987). However, where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition. [Citations omitted.] (Emphasis added.)

Here, Plaintiff's claims are not "clearly frivolous." The claims in the SAC are specific and detailed. The claims in the SAC set out how Defendants purchased California seed products from a California farm, when Defendants had neither the ability nor intention to ever pay for these seeds. Further, the Amazon.com and Walmart.com ads show that there are legitimate questions regarding the amount and

regularity of such sales to California residents. Jurisdictional discovery is appropriate here on this basis.

Plaintiff should be permitted to engage in jurisdictional discovery because this is a simple and reasonable means to determine Seville's minimum contacts with California and whether factors which support an appropriate pleading of alter ego are present here. See *Rutsky Co. Ins. Servs., Inc. v. Bell Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

**E. <u>PLAINTIFF HAS SUFFICIENTLY ALLEGED ALTER EGO LIABILITY AGAINST WOODBRIDGE PARTNERS</u>**

First, **because** Plaintiff has properly jurisdiction against Seville, jurisdiction is properly pled Woodbridge Partners as an alter ego of Seville Farms. See *Daimler AG v. Bauman* (2014) 571 U.S. 117, 135.

Second, Plaintiff's allegations are sufficient to allege alter ego against each Defendant, including Woodbridge Partners.

The general test in the Ninth Circuit for alter ego liability is two-pronged:

1. <u>Unity of Interest and Ownership</u>: There must be such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased. Factors to be considered can include commingling of funds, undercapitalization, treatment of corporate assets as individual assets, and failure to observe corporate formalities.
2. <u>Inequitable Result</u>: Adherence to the fiction of the separate existence of the corporation would promote injustice or an inequitable result.

See *Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Service, Inc.*, 736 F.2d 516 (9th Cir. 1984).

Plaintiff alleges in the SAC that (with emphasis added):

> … Plaintiff alleges that at the time the transaction which is the basis for this matter was entered into between Seville and Plaintiff, the Brentlinger Defendants knew Seville was severely underfunded and entered into said

> transaction with knowledge that Seville would not and could not pay for the seeds purchased by Plaintiff, and the intention to not pay for the seeds. Instead, **the Brentlinger Defendants' intention was to purchase the seeds from Plaintiff with the intention that any claim made for the payment for the seeds could only be made against Seville and not the Brentlinger Defendants, thereby protecting the Brentlinger Defendants from any consequences for their unfair and fraudulent conduct** as alleged herein. SAC ¶ 7.

> Plaintiff alleges that there exists, and at all times mentioned herein existed, **a unity of interest and ownership between Seville, Woodbridge, and the Brentlinger Defendants such that any individuality and separateness between these Defendants does not exist**, because, among other reasons, Seville was grossly underfunded when it ordered the seeds from Plaintiff, and allowing only Seville to be responsible for the breach of contract and fraud associated with this seed order **would result in a severely unfair result and would otherwise sanction an injustice** against Plaintiff. Adherence to the fiction of the separate existence of Seville, Woodbridge, and the Brentlinger here should not be permitted… SAC ¶ 8.

Plaintiff has alleged that no individuality or separateness exists between the Woodbridge Partners and Seville. Plaintiff has alleged an unfair result and injustice if the corporate veil is not pierced. Plaintiff has alleged gross underfunding. Plaintiff submits these allegations are sufficient. If the court disagrees, Plaintiff requests leave to amend to better plead alter ego here.

Plaintiff submits it would also be incredibly unfair for Seville Farms – the alleged shell company here – to have jurisdiction, but because of the corporate veil, the "Brentlinger Defendants" (including Woodbridge Partner) were allowed to escape any liability in California, when their severely underfunded company purchased the seeds from Plaintiff with no intention or ability to every pay.

### F. PLAINTIFF HAS PROPERLY STATED EACH CAUSE OF ACTION AGAINST WOODBRIDGE PARTNERS

Plaintiff's claims for Breach of Contract, Fraudulent Inducement, Injunction and Fraudulent Transfer are properly pled in ¶¶ 8,9, 36 37 and 38 of the SAC. If the court disagrees, Plaintiff requests leave to amend be granted.

## VI. CONCLUSION

Plaintiff submits that the court should deny this Motion to Dismiss. If the court determines that any claim or allegation has not been sufficiently pled, Plaintiff respectfully requests that it be granted leave to amend the SAC.

Dated: December 21, 2023

**HAMNER LAW OFFICES, APLC**

/s/ Chris Hamner

______________________________

Christopher J. Hamner
Attorney for Plaintiff